USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/2/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
    JOHNNY MORGAN,

                                   Plaintiff,                  1:14-cv-7921-GHW

           -v -                              MEMORANDUM OPINION
                                                      AND ORDER

MICHAEL WARD (Captain), MAUREEN P.
BAIRD (Warden), WILLIAM HUTCHINGS
(Associate Warden), KIMBERLY SHIVERS
(Operations Lieutenant), RASHEE GRAHAM
(Senior Officer), CHRISTOPHER MERRICK
(Senior Officer), KEITH HARDY (Activities
Lieutenant), GEORGE GREEN (Recreation
Officer), JABRADDRICK DURRANT
(Corrections Officer), GREGORY ADAMS
(Corrections Officer), WILLIAM FELICIANO
(SHU Officer), CATHERINE L. LINAWEAVER
(Warden), and THE UNITED STATES OF
AMERICA,

                                 Defendants.
------------------------------------------------------------------ X

GREGORY H. WOODS, United States District Judge:

      The plaintiff, Mr. Johnny Morgan, brings this action against twelve officials from the Metropolitan Correction Center ("MCC") in New York City, who he alleges were involved in a warrantless search of his person. The defendants have moved to dismiss the action, arguing that, among other things, Mr. Morgan failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). Because exhaustion of remedies is an affirmative defense, and the plaintiff's failure to exhaust his remedies is not apparent on the face of the complaint, the motion to dismiss the action in its entirety is denied. Because the plaintiff's allegations regarding the

personal involvement of a number of supervisory officers at the facility are insufficient, however, the plaintiff's claims against those defendants are dismissed without prejudice.

I.      **Factual Background**[1]

At approximately 6:30 p.m. on February 10, 2014, in the visiting strip search area of the MCC, defendant senior correctional officer Rashee Graham conducted a visual search of the plaintiff's body and found part of a condom protruding from the plaintiff's rectum. Fourth Amended Complaint ("Compl."), Dkt. No. 52. at 5. According to the plaintiff, Graham did not obtain a search warrant before attempting to retrieve the item. *Id.* at 5, 8. Instead, Graham called for assistance, and defendants Green, Merrick, Hardy, Durrant, Adams, and Feliciano, who were correctional officers and senior correctional officers from various MCC units, responded. *Id.* at 5. Green, Merrick, Hardy, Durrant, Adams, and Feliciano physically restrained the plaintiff by holding his hands against the wall. *Id.* While the plaintiff was restrained, Graham—who had no medical training—forced his fingers into the plaintiff's rectum repeatedly in an effort to retrieve the contraband lodged inside. *Id.* As a result of Graham's probes, the plaintiff sustained a "torn and lacerated rectum," experienced a burning sensation, and suffered from "serious" bleeding. *Id.* at 5, 9. The search caused the plaintiff to experience extreme emotional distress. *Id.* at 5.

The plaintiff alleges that Graham did not allow him to seek medical treatment until the following day in an effort to allow his injuries to subside, and, thus, to conceal them. *Id.* at 5. The plaintiff further alleges that the six correctional officers who physically restrained him—Green, Merrick, Hardy, Durrant, Adams, and Feliciano—unlawfully restrained him, failed to prevent the warrantless search, and failed to take him to receive medical treatment. *Id.* at 9-12, 14. In addition,

---

[1] Unless otherwise noted, the facts are taken from the fourth amended complaint, and are accepted as true for purposes of this Rule 12(b)(6) motion. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

the plaintiff alleges that Green concealed official reports concerning the plaintiff's search and injuries, and that Merrick and Hardy attempted to conceal their failures in official reports by asserting that they had taken the plaintiff to receive medical treatment after the search. *Id.* at 9-10.

On February 11, 2014 at 3:55 p.m., Ramos conducted an "external (visual) examination" of the plaintiff. *Id.* at 5. The plaintiff alleges that he was not given an "internal examination," or any other medical care. *Id.*

The plaintiff alleges that defendants Operations Lieutenant Kimberly Shivers, Associate Warden William Hutchings, Captain Michael Ward, and Wardens Maureen Baird and Catherine L. Linaweaver were also responsible for his injuries as a result of their direct or indirect supervision of the correctional officers who were directly involved in the search. *Id.* at 5-8, 12. According to the plaintiff, Shivers was directly in charge of the correctional officers who participated in the plaintiff's search because she was the supervisor of the visiting area. *Id.* Hutchings was the administrator of the visiting area. *Id.* And Ward, Baird and Linaweaver were responsible for the general safety and security of the inmates at the MCC. *Id.* The plaintiff alleges that Baird became warden of the MCC after Linaweaver retired. *Id.*

The plaintiff alleges that Ward, Baird, Linaweaver, Hutchings, and Shivers all failed to properly supervise their staff "by allowing [the plaintiff's] warrantless search" to take place. *Id.* at 5. The plaintiff faults those supervisors for being indifferent to his serious medical condition, failing to obtain a search warrant before his search, and permitting a medically untrained individual to conduct the search. *Id.* at 5-8, 12. The plaintiff does not aver that those supervisors were aware of the search or the later denial of medical treatment as those events were taking place. The plaintiff simply alleges, without further elaboration, that Ward, Baird, Linaweaver, Hutchings, and Shivers all "created [and] fostered an atmosphere that allowed warrantless searches [and] deliberate indifference to serious medical needs of inmates," and that they "failed to act to prevent unconstitutional acts

3

from occurring and failed to enforce constitutional law upon information in internal reports and through subordinates indicating unconstitutional acts were occurring." *Id.* at 6-7, 12.

## II.    Procedural History

The plaintiff commenced this action *pro se* on September 29, 2014, and has amended his complaint multiple times. On May 29, 2015, the plaintiff filed his fourth amended complaint seeking damages for the physical and emotional injuries that he allegedly sustained. The plaintiff argues that the forcible removal of contraband from a body cavity by correctional officers who did not have a search warrant—or medical training—and their subsequent failure to provide him with medical treatment, violated his Fourth and Eighth Amendment rights. The plaintiff brings *Bivens* claims against the twelve MCC officials, and claims against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq*.

The defendants have moved to dismiss the fourth amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, in the alternative, as to defendant William Hutchings, for summary judgment pursuant to Federal Rule of Civil Procedure 56. The defendants first argue that pursuant to both the PLRA and the FTCA, the plaintiff was required to administratively exhaust his claims before commencing this suit, but failed to do so. The defendants also contend that the complaint fails to state a *Bivens* claim against Shivers, Hutchings, Ward, Linaweaver, and Baird, because it does not adequately establish the personal involvement of those defendants in the alleged constitutional violations. For the same reason, the defendants also argue that those defendants are entitled to qualified immunity. Hutchings also moves, in the alternative, for summary judgment on the basis that he did not work at the MCC during the relevant time period.

**III.     Legal Standard**[2]

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While the well-established rule in this circuit is that *pro se* submissions are to be liberally construed and interpreted to raise "the strongest arguments they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted), the plausibility standard applies equally to *pro se* complaints. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

To state a claim for relief that is facially plausible, an allegation must be "more than an unadorned, the-defendant-unlawfully-harmed me accusation"; a claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a plaintiff has not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In making that determination, the Court must accept as true all well-pleaded factual allegations in the complaint, and "draw[ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006) (internal quotation marks and citation omitted). On the other hand, "the tenet that a court must accept as true all of the allegations contained in a

---

[2] Although the defendants move to dismiss the complaint pursuant to both Rule 12(b)(1), for lack of subject-matter jurisdiction, and 12(b)(6), for failure to state a claim, the Court analyzes the arguments under Rule 12(b)(6). In their reply papers, the defendants acknowledge that their argument regarding the plaintiff's failure to exhaust under the FTCA should be analyzed under Rule 12(b)(6). Defendants' Reply ("Defs.' Reply"), Dkt. No. 67 at 7. However, the defendants appear to frame their PLRA failure to exhaust argument under Rule 12(b)(1). The PLRA exhaustion requirement, however, is not jurisdictional, but is, rather, an affirmative defense that is more appropriately addressed under Rule 12(b)(6). *See, e.g.*, *Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir. 2003) (per curiam) (holding that exhaustion of administrative remedies is not jurisdictional under the PLRA); *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (holding that exhaustion of administrative remedies under the PLRA is an affirmative defense); *Khudan v. Lee*, No. 12-Civ-8147 (RJS), 2015 WL 5544316, at *3 (S.D.N.Y. Sept. 17, 2015) (concluding that motion to dismiss for failure to exhaust under the PLRA should be addressed under Rule 12(b)(6), not Rule 12(b)(1)).

complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 (a court is "'not bound to accept as true a legal conclusion couched as a factual allegation'") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

On a Rule 12(b)(6) motion, a court is limited to consideration of the facts as stated in the complaint, any documents that are attached to the complaint, and any documents that are incorporated by reference into the complaint. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Id.* The plaintiff used a form document for *pro se* litigants to frame his complaint, and, in a section requesting information regarding steps he had taken to exhaust his administrative remedies, he referred to the grievances that he filed with the Bureau of Prisons ("BOP"), and briefly characterized the responses that he received to those grievances. Compl. at 13. While the complaint referred to the grievances filed by the plaintiff, the complaint does not attach the grievances, and it does not expressly incorporate the grievances into the complaint by reference. Nor does the complaint refer to the text of the grievances to establish the substance of his claims. *Cf. Thomas v. Goord*, 215 F. App'x 51, 54 n 2 (2d Cir. 2007) (considering a grievance that the plaintiff referenced in his complaint incorporated by reference for purposes of a Rule 12(b)(6) motion). Given that an affirmative pleading of exhaustion of administrative remedies is not required under the PLRA, as discussed further below, the Court does not conclude that the references to grievances included by the plaintiff in response to form questions render the grievances themselves "integral" to the complaint.

In support of their motion to dismiss, the defendants submitted a declaration that attached one of the plaintiff's grievances and internal BOP reports. *See* Declaration of Adam Johnson, Dkt. No. 55 ("Johnson Decl."). "A district court has two options when presented with matters

outside the pleadings in conjunction with a Rule 12(b)(6) motion: '[1] the court may exclude the additional material and decide the motion on the complaint alone or [2] it may convert the motion to one for summary judgment under [Rule] 56 and afford all parties the opportunity to present supporting material.'" *Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 362 (S.D.N.Y. 2013) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)); *see also* Fed. R. Civ. P. 12(d).  Given that the plaintiff is proceeding *pro se*, and should be afforded clear notice of a motion for summary judgment, the Court declines to convert the motion to dismiss into a motion for summary judgment, and, therefore, does not consider Mr. Johnson's declaration or the exhibits attached to it.

## IV. Discussion

### A. Exhaustion of Administrative Remedies

#### 1. FTCA

The defendants first contend that the entire complaint must be dismissed because the plaintiff failed to exhaust his administrative remedies as required by the FTCA and the PLRA, 42 U.S.C. § 1997e.  The FTCA waives the United States' sovereign immunity for certain classes of tort claims, and "requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005).  It is undisputed that the plaintiff was required to administratively exhaust his FTCA claim before bringing this suit, and that he failed to do so.  In his opposition brief, the plaintiff concedes that his FTCA claim was prematurely filed because no administrative FTCA claim had been submitted to the BOP before this action commenced.  Pl. Opp'n. at 3.  The plaintiff contends that he has corrected this oversight by filing an FTCA claim with the BOP on June 29, 2015.[3]  The

---

[3] In a letter filed with the Court on January 15, 2016, Dkt. No. 86, the plaintiff asserts that he has received confirmation of exhaustion of his administrative remedies under the FTCA.

plaintiff would like the Court to dismiss his FTCA claim "without prejudice," so that he can renew his FTCA claim at a later date. *Id.* The defendants do not oppose the plaintiff's request to dismiss the claim "without prejudice." Reply at 7. Accordingly, the Court dismisses without prejudice the plaintiff's FTCA claim against the defendant United States of America.

    2.    ***Bivens*** **Claims**

The PLRA requires an inmate to exhaust all available administrative remedies prior to filing suit in federal court with respect to prison conditions. 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011). Moreover, the plaintiff's exhaustion must be "proper." "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

Failure to exhaust administrative remedies is an affirmative defense under the PLRA. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Hubbs*, 788 F.3d at 59. "[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Thus, as with other affirmative defenses, dismissal pursuant to Rule 12(b)(6) for failure to exhaust is appropriate only if that failure is apparent from the face of the complaint. *See, e.g., Pierre-Louis v. Martinez*, No. 12-civ-2240 (NGG)(LB), 2014 WL 4161960, at *4 (E.D.N.Y. Aug. 19, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is . . . appropriate only where non-exhaustion is apparent from the face of the plaintiff's complaint."); *Johnakin v. NYC Dep't of Corr.*, No. 11-CV-4807 (SLT)(LB), 2013 WL 5519998, at *6 (E.D.N.Y. Sept. 30, 2013) ("Since this Court does not find that

8

'nonexhaustion is clear from the face of the complaint,' this Court declines to dismiss this action for failure to exhaust administrative remedies at this juncture.") (quoting *McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003)).

While the PLRA's exhaustion requirements are mandatory, the Second Circuit has recognized a number of "caveats," in which compliance is excused.[4] Those exceptions, which the Court will describe as the *Hemphill* exceptions by reference to the case in which they were articulated, are available when: "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such [a] way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).

The correctional facility's requirements, and not the PLRA "define the boundaries of proper exhaustion." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009). In this case, the plaintiff was required to comply with the BOP's Administrative Remedy Program in order to exhaust his *Bivens* claims. 28 C.F.R. § 542. Under that four-step program, an inmate is required, except when alleging sexual abuse, to attempt informal resolution of his complaint, and may do so by presenting the issue informally to staff. *See* 28 C.F.R. § 542.13(a); 28 C.F.R. § 115.52(b)(1). The form utilized at this stage is referred to as a BP-8 form. *Tyree v. Zenk*, No. 05CV2998 (RJD)(LB), 2007 WL 527918, at *4 (E.D.N.Y. Feb. 14, 2007). If the complaint cannot be resolved informally, the inmate may file a BP-9 form, a formal written request to the warden, within twenty days of the event that triggered the inmate's complaint, or in the instances of sexual abuse allegations, at any time. 28 C.F.R.

---

[4] The Second Circuit has acknowledged that the Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81 (2006), may call into question the exceptions articulated in *Hemphill*. *See Heyliger v. Gebler*, --Fed. App'x.--, 2015 WL 5616288 *1 n. 3 (2d Cir. 2015) (collecting cases). Still, the Court is required to accept *Hemphill* as the governing law in this circuit.

9

§ 542.14(a); 28 C.F.R. § 115.52(b)(1). "An inmate who is not satisfied with the Warden's response" to a BP-9 may appeal to the regional director by submitting a BP-10 form within 20 days of the response. 28 C.F.R. § 542.15(a). Finally, an inmate who is dissatisfied with the regional director's response to a BP-10 may appeal to the general counsel of the BOP by submitting a BP-11 form within 30 days. *Id.* Any of those time limits may be extended "[w]hen the inmate demonstrates a valid reason for delay . . . ." *Id.*

In his complaint, the plaintiff alleges that he filed BP-8, BP-9, BP-10, and BP-11 forms to grieve the "warrantless search and the unlawful restraint and the injuries caused by [correctional officer] R. Graham." Compl. at 12. The plaintiff further alleges that:

> The incident occurred on 2/10/14. I was not allowed to file a BP-8 until 4/7/14 which was ignored. I reiterated my complaint to the Warden as a BP-9 which was responded to after 31 days (Late) (Not 20 Days). The BP-9 claimed that the investigation was still going on [and] no decision was rendered until December 2014 or January 15. I filed a BP-10 which was received on 8/11/14 and deemed untimely. I filed a BP-11 on 8/27/14– Received on 9/4/14 – It was deemed untimely.

Compl. at 13.

The defendants argue that the plaintiff failed to exhaust his administrative remedies because he filed his BP-10 and BP-11 forms late. The defendants submit that the plaintiff's failure to exhaust is clear on the face of the complaint because the complaint states that both forms were "deemed untimely." Defs. Brief at 18. But there is a difference between saying that something has been "deemed" untimely, and saying that it was, in fact, untimely. The Court cannot construe the plaintiff's summary description of the BOP's responses to his grievances as a concession that they were untimely, as the defendants request. This is particularly true given the Court's obligation to review the *pro se* plaintiff's complaint with special solicitude. The Court also observes that it appears that the plaintiff attempted to justify the lateness of his BP-10 when he filed his BP-11. If that was the case, it is also not apparent from the face of the complaint that the BOP rejected the plaintiff's

request for an extension of time. Without considering evidence extrinsic to the complaint, the Court cannot resolve this question.

Finally, the Court observes that even if it were to find that the plaintiff's BP-10 and BP-11 forms were filed late and that their lateness was not excused, the inquiry would not necessarily end there. Under the first and third *Hemphill* exceptions, the Court must evaluate whether the exhaustion requirement should be excused because "administrative remedies are not available to" the plaintiff, or "a reasonable misunderstanding of the grievance procedures" justified the plaintiff's "failure to comply with the exhaustion requirement." *Ruggiero*, 467 F.3d at 175. In his opposition brief, the plaintiff argues that both of those exceptions apply to his case because correctional officers refused to provide him with a BP-8 form, and because the BOP's confusing response to his BP-9 form led him to believe that he should file his BP-10 at the close of the ongoing investigation into his complaint, not within 20 days of the response. Pl. Opp'n. at 10-15. The Court expresses no view regarding those arguments at this stage in the proceedings.

Since failure to exhaust administrative remedies is an affirmative defense, and that defense is not apparent on the face of the complaint, the Court denies the defendants' motion to dismiss on that ground. The defendants may, of course, assert this defense in a motion for summary judgment. In opposition to any such summary judgment motion, the plaintiff is free to assert that he should be excused from the exhaustion requirement on the basis of one or more of the *Hemphill* exceptions.

### B. Supervisory Liability

The defendants also contend that the fourth amended complaint does not allege that Shivers, Hutchings, Ward, Linaweaver, and Baird were personally involved in the alleged constitutional violations, and that, therefore, those defendants cannot be held liable for the plaintiff's *Bivens* claims. The defendants submit that the plaintiff merely alleges that those

11

defendants held supervisory roles, and not that they were sufficiently personally involved in the plaintiff's alleged injuries. Defs. Br. at 15-16.

"[A] plaintiff in a *Bivens* action is required to allege facts indicating that the defendants were personally involved in the claimed constitutional violation." *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009). "Because vicarious liability is inapplicable to *Bivens* . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. It has long been the law in this circuit that a supervisor's personal involvement may be shown by evidence that she: (1) participated directly in the alleged constitutional violation; (2) failed to remedy the wrong after being informed of the violation through a report or appeal; (3) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[5]

In his opposition brief, the plaintiff offered new factual allegations about Ward's, Baird's, Linaweaver's, and Shivers' personal involvement that were not made, at least not explicitly, in his complaint. As described above, in a Rule 12(b)(6) motion, a court is limited to consideration of the facts as stated in the complaint, any documents which are attached to the complaint, and any

---

[5] Following the Supreme Court's decision in *Iqbal*, there has been some question, so far unresolved by the Second Circuit, as to whether *Iqbal* heightened the requirements for showing of a supervisor's personal involvement with respect to certain constitutional violations, and, therefore, foreclosed some of the *Colon* categories. *Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014)("We have not yet determined the contours of the supervisory liability test . . . after *Iqbal*."); *Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) ("*Iqbal* has, of course, engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon* . . . [b]ut the fate of *Colon* is not properly before us"). At the very least, there can be no question that the first *Colon* category—direct participation in the alleged constitutional violation—remains intact. *See, e.g., Hollins v. City of New York*, No. 10 civ. 1650 (LGS), 2014 WL 836950, at *13 (S.D.N.Y. Mar. 3, 2014) (concluding that only the first and third *Colon* categories survived *Iqbal*). Because the plaintiff has failed to allege facts that satisfy any of the *Colon* factors with respect to any of the supervisory defendants other than Shivers, who the plaintiff alleges directly participated in the search, the Court need not consider which *Colon* categories survived *Iqbal*.

documents which are incorporated by reference into the complaint. *Roth*, 489 F.3d at 509. However, because a *pro se* plaintiff's allegations must be construed liberally, it can be appropriate for a court to consider factual allegations made in a *pro se* plaintiff's opposition memorandum to a motion to dismiss, as long as the allegations are consistent with the complaint. *See, e.g.*, *Braxton v. Nichols*, No. 08 Civ. 08568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar.18, 2010) (collecting cases). The plaintiff's new factual allegations about Ward, Baird, Linaweaver, and Shivers discussed below are consistent with the allegations in the complaint. Accordingly, liberally construing the plaintiff's complaint as it is required to do, the Court will consider those factual allegations in its analysis of this issue.

### 1.   Defendant Ward

The plaintiff does not allege any specific facts to support any theory of supervisory liability with respect to Ward. The plaintiff's complaint consists exclusively of conclusory allegations that Ward was responsible for the plaintiff's injuries because of his position and responsibilities as captain. The plaintiff alleges that Ward was "responsible for the safety and security of the institution for both inmates and staff." Compl. at 5. The plaintiff further alleges that:

> 1) Captain Ward . . . [f]ailed to obtain a search warrant necessary to prevent a 4th Amendment violation –[senior officer] Graham's warrantless search of Johnny Morgan.
> 2) Captain Ward . . .[w]as deliberately indifferent to Morgan's serious medical needs and permitted a medically untrained individual (Graham) to conduct a search which violated Morgan's 8th Amendment rights to be free from cruel and unusual punishment in an effort to conceal unnecessary injury and wanton infliction of pain.
> 3) Captain Ward . . . [c]reated and fostered an atmosphere that allowed warrantless searches and deliberate indifference to serious medical needs of inmates. This was a matter of custom and internal policy. Captain Ward failed to protect inmate Morgan.
> 4) Captain Ward  . . . [w]as grossly negligent in supervising subordinates who caused Morgan's injuries and violated his 4th Amendment and 8th Amendment rights.
> 5) Captain Ward  . . . [f]ailed to act to prevent unconstitutional acts from occurring and failed to enforce constitutional law upon information in internal reports and through subordinates indicating unconstitutional acts were occurring.

Compl. at 6 (emphasis removed). The plaintiff's allegations against Ward are nothing more than bare assertions, conclusions and formulaic recitations of the elements of supervisory liability, and are devoid of non-conclusory factual allegations describing how Ward was involved in the alleged constitutional violations.

Even if Ward was responsible, as the plaintiff alleges for the first time in his opposition brief, "for the training, procedures, and practices" of every correctional officer involved in the February 10, 2014 search, that fact alone is insufficient to satisfy any of the tests for supervisory liability. Pl. Opp'n. at 5. *Bivens* claims premised on deficient training are generally analyzed pursuant to the fifth *Colon* factor—deliberate indifference. *See, e.g.*, *Vazquez-Mentado v. Buitron*, 995 F. Supp. 2d 93, 101 (N.D.N.Y. 2014); *Mimms v. Carr*, No. 09-CV-5740, 2011 WL 2360059, at *13 (E.D.N.Y. June 9, 2011). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). "Deliberate indifference may be inferred where the need for more or better supervision to protect against constitutional violations was obvious, but the policymaker failed to make meaningful efforts to address the risk of harm to plaintiffs." *Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (alterations and internal citations and quotation marks omitted).

The plaintiff has not alleged any facts that suggest that Ward was aware of a pattern of similar warrantless body cavity searches taking place at the MCC, or that a need for training to prevent such searches was obvious. In fact, the only search of that nature that the plaintiff alleges took place at the MCC was his own. In sum, the plaintiff has offered no factual allegations that could make his claims regarding Ward's personal involvement in the alleged constitutional violations plausible. Accordingly, the plaintiff's claims against Ward are dismissed without prejudice.

### 2. Defendants Linaweaver and Baird

The plaintiff's allegations in the complaint against Linaweaver and Baird are nearly identical to those made against Ward, and are repeated almost verbatim. Compl. at 5-7, 12. Without more, the plaintiff's claims against these two defendants would also need to be dismissed for the same reasons as above. In his opposition brief, however, the plaintiff asserts some additional facts regarding those defendants, which the Court evaluates here. The plaintiff alleges very generally that Linaweaver and Baird were "personally tied to [his] claim by virtue of their poor handling of the grievance process . . . ." Pl. Opp'n. at 5-6. The plaintiff does not explain how Linaweaver was involved with his grievance. Baird signed the response to the plaintiff's B-9 form, and the Court can infer from her signature that she played some role in the grievance process. Pl. Opp'n., Ex. 8. Additionally, the plaintiff faults Baird for interpreting his grievance as one of individualized staff misconduct when it should have been understood, in the plaintiff's view, as systemic misconduct. Pl. Opp'n. at 6.

To the extent that the plaintiff seeks to allege that both Linaweaver and Baird played a role in denying his grievance, the plaintiff has not adequately alleged facts to implicate their personal involvement in the alleged constitutional violations. Some courts have held that if the supervisory official acts personally in denying a grievance, the official may be sufficiently involved in failing to remedy the situation. *See Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008). "To determine personal responsibility in such a case, the grievance must allege an 'ongoing' constitutional violation that the supervisory official who reviews the grievance can remedy directly." *Vega v. Artus*, 610 F. Supp. 2d 185, 198 (N.D.N.Y. 2009). "If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation." *Harnett*, 538 F. Supp. 2d at 524.

There is nothing in the plaintiff's grievance that suggests that the plaintiff suffered from an ongoing constitutional violation. Although the plaintiff now argues that his grievance was one of "systemic misconduct," the Court observes that the grievance itself simply describes what took place during his own search. Pl. Opp'n., Exs. 8-10. Assuming that Linaweaver and Baird did in fact review the plaintiff's grievance, they would have been confronted with an alleged constitutional violation that had already occurred and was not ongoing. The plaintiff does not allege any specific facts in his complaint or in his opposition brief to support any of the theories of supervisory liability with respect to Linaweaver and Baird. Accordingly, the plaintiff's claims against Linaweaver and Baird are dismissed without prejudice.

### 3. Defendant Shivers

The plaintiff's allegations in the complaint against Shivers are almost identical to the allegations made against the other supervisory defendants. Compl. at 5, 7-8. However, the plaintiff specifically alleges in his complaint that Shivers "was directly in charge of [the officers who conducted the search] as supervisor of the visiting area . . . ." Compl. at 5. In his opposition brief, the plaintiff adds allegations that Shivers was present during his cavity search and that she directly supervised it. Pl. Opp'n. at 5. With these new allegations, the plaintiff's claims that Shivers failed to obtain a search warrant before the search and failed to prevent the search from taking place are nudged "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Liberally construed, the plaintiff's complaint sufficiently alleges that Shivers participated directly in the alleged constitutional violations.[6] The Court denies the defendants' request to dismiss Shivers from this action.

---

[6] The Court observes that Exhibit 4 to the Plaintiff's Opposition is a memo dated February 10, 2014, by Lieutenant Shivers in which she appears to describe her actions at the scene of the plaintiff's search.

16

In sum, the plaintiff's claims against Ward, Linaweaver, and Baird are dismissed without prejudice. The plaintiff's claims against Shivers survive this motion.

### C. Qualified Immunity

The defendants also contend that Shivers, Hutchings, Ward, Linaweaver, and Baird are entitled to qualified immunity because "there are no plausible allegations of personal involvement by these defendants." Defs. Brief at 6. The Court does not reach this issue because, for the reasons stated above, it has already determined that all of the plaintiff's claims against Hutchings, Ward, Linaweaver, and Baird are subject to dismissal. The Court has concluded that there are plausible allegations of Shivers' personal involvement in the alleged constitutional violations. The defendants have not argued that Shivers should be entitled to qualified immunity if the complaint adequately asserts that she was personally involved in the alleged constitutional violations. Therefore, the Court has no basis at this time to conclude that Shivers is entitled to qualified immunity.

### D. Hutchings' Motion for Summary Judgment

Hutchings moves, in the alternative, for summary judgment. Hutchings argues that he stopped working at the MCC on November 13, 2013, and that he can bear no liability for an incident that took place after he left the facility. Defs. Br. at 18. Hutchings's motion for summary judgment has been rendered moot by subsequent events. In his opposition brief, the plaintiff acknowledged that "if in fact, [associate warden] Hutchings was no longer employed at MCC at the time of the incident, the complaint should be amended to include the correct defendant who was the [associate warden] of operations at that time." Pl. Opp'n. at 22. On September 10, 2015, the defendants informed the Court and the plaintiff that the associate wardens working at the MCC on February 10, 2014 were Charleston Iwuaguwu and Melissa Rios. Defendants' Letter dated September 10, 2015, Dkt. No. 69. On October 13, 2015, the plaintiff requested leave from the Court to amend his complaint in order to remove Hutchings and to add Iwuaguwu and Rios as

defendants in this action. Plaintiff's Letter dated October 1, 2015, Dkt. No. 74. The Court construes the plaintiff's letter as a request to voluntarily dismiss his claims against Hutchings in this action pursuant to Federal Rule of Civil Procedure 41(a)(2). That request is granted. The plaintiff's claims against Hutchings are dismissed without prejudice. The Court will grant the plaintiff leave to file a fifth amended complaint to add Charleston Iwuaguwu and Melissa Rios as defendants in this action if he wishes to do so.

**V.    Conclusion**

For the foregoing reasons, the defendants' motion to dismiss is granted in part and denied in part. The plaintiff's claims against defendants Michael Ward, Catherine Linaweaver, Maureen Baird, and William Hutchings are dismissed without prejudice.

The plaintiff is granted leave to file a fifth amended complaint to add Charleston Iwuaguwu and Melissa Rios as defendants in this action and to cure the defects outlined in Section IV(B)(1)-(2) of this order. The plaintiff is directed to file any such amended complaint within thirty days after the date of this order.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to remove William Hutchings from the caption in this case, and to terminate the motion pending at docket number 53.

SO ORDERED.

Dated:  February 2, 2016
New York, New York

_____
GREGORY H. WOODS
United States District Judge